Case number 21-1732, Linda D. Epps, Appellants v. Potomac Electric Power Company. Mr. Swick for the Appellants, Ms. Carnell for the Appellate. Good morning. If it pleases the court, On June 23, 2016, PEPCO sent a letter to Linda Epps, who had been out on disability for 10 years, telling her that if she didn't come back to work, they would terminate her. In the same letter, PEPCO told her that if there were medical things that could be accommodated, they would work with her. Ms. Epps responded through her treating healthcare provider, Carol Branta, that she was able to come back to work and ask for minimal restrictions, which, if you really get into it, were not restrictions at all, because her main problem had been the supervisor she had. That supervisor had retired. Had PEPCO worked with Ms. Epps reasonably at that point, she would have been back to work in short order. I think a jury looking at this and wondering why didn't they bring her back to order can reasonably conclude it was because of the medical history that PEPCO had. So we move on. In November of 2016, PEPCO's attorney concludes that the restrictions that Ms. Epps has asked for are too onerous. Now, the restriction was that she wanted a shorter commute, and she had worked her whole career at the main PEPCO facility in Benning Road. She essentially wanted to go back to that. Before she went on sick leave, there was a short period of time where they had her in Rockville, mainly to avoid her having to work with Ms. Craddock. She wanted to have a different supervisor, and that was not an issue. Ms. Craddock had retired. She asked for a different office, but that had more to do with Ms. Craddock than any real need to change offices. And if anybody had talked to her about it, they would have found that out. So to conclude that it's too onerous as a knee jerk reaction, just highlights the fact that there was no reasonable interaction with Ms. Epps to get her back to work. The person responsible for deciding whether Ms. Epps would come back to work was Marie Robertson, a registered nurse. And Ms. Robertson's first reaction was, well, don't bring her back to work. She didn't respond to the June 23 letter in time. Well, actually, she had, so that went out. Ms. Robertson interacted with Carol Ranta, the counselor, and then ultimately decided that she needed a higher level of authority. Ms. Ranta was a licensed clinical professional counselor, and Ms. Robertson was looking for something from a psychologist. As it turned out, Ms. Epps had seen Dr. Pantanones also during the course of her treatment, and he was a licensed psychologist and they got a report from him. So by the time all this happens, it's May of 2017. At that point, Ms. Robertson sends a text message to Linda Epps and tells her, OK, I got the form 602, which is a PEPCO form, and I got your psychologist thing. I will get in touch with HR, Joshua Davis, and they'll have a position description for you to look at. That never happened. So as a drug on, Ms. Epps thought, forget about these restrictions. I want to get back to work. So at the end of September. Mr. Swick, let me ask a question about what you just said, that she wanted to get back to work. Can you address PEPCO's argument about the SSDI benefits? Can you address that argument? I'm not sure what you mean by that. I think PEPCO says something to the effect that Ms. Epps has been receiving SSDI disability benefits and that in order to receive those benefits, she's had to tell the federal government that she is not qualified or able to do any job. So if she's not qualified to do any job, how is she qualified to do a job at PEPCO? Well, with the SSDI, Ms. Epps did talk about that. With the SSDI, people who are on that, I mean, they do want them to try to get back to work. And they have a process that if the person's able to get back to work, then they will discontinue SSDI benefits. And that's what Ms. Epps would have done. Unfortunately, they never did get her back to work. So it's not fair to say that she has been telling the government that she is unable to do any work. She had told the government that. I don't think it was a continuing, ongoing thing. And, you know, she was looking to get back to work so she could get off those benefits. Do you think that someone who is able to work should tell the government that they should no longer receive disability benefits that are premised on the condition that you are unable to work? No, but I don't think that's what was going on. She wasn't able to go to work. If you're receiving benefits from the federal government or from any government that are based on a particular factual premise and that factual premise changes, don't you have an obligation to tell the government that the factual premise has changed and that you're no longer entitled to those benefits? There's a report from her, Dr. Carol Ranta, which is our exhibit run. And that was done even before Ms. Epps started to interact with PEPCO. And Ms. Ranta, in that report, details Ms. Epps' history and details the progress that's been made in the counseling and tells the Social Security Administration that she's anticipating that she can get back to work later. This is in February of 2016, I believe, that she should be able to get back to work later that year. So I don't think that it's a question of her misleading the government. But this is really stuff that if PEPCO wants to ask Ms. Epps about that and in Petro, it's really for the jury to decide whether that kind of a credibility issue would invalidate her claim some way. Ultimately, though, under the law, Mr. Swick, wasn't it Ms. Epps' responsibility to identify a position that she was qualified for and that she would accept? And she never did that. Well, that's the way PEPCO set it up. But the way they set it up was the positions that were available were never known to her because they told her, well, we'll look on the public website and find something. Well, the positions weren't there. But during the time that she was looking for a job, there was eight of these service associate jobs that got filled. Most of them were at the service associate one, which was the career entry level position. As they told Ms. Epps about these positions, they could easily have put her into them. These positions are just generic. But that's the way you phrased it is, I think, a key issue here. You're saying that PEPCO could have easily put her in a position. Under our case law, ACCA and other cases, it's not for the employer to put the employee into a position in this circumstance, is it? Well, the employer is the one that has knowledge of where the positions are. If they had told Ms. Epps about the positions, she would have been wanted. There was one position they identified with Gary Keeler, the engineer position in Forestville, where they were setting up an interview for her. She would have been happy to go to that interview. But then they decided, well, we're not going to do that because we're not going to bring her back. That was in September of 2017. And then in 2018, Bonnie Beatrice identifies a service position as late as March. And well, no, that position is not really for her. But then we get documents that show they filled six of those positions and never told Ms. Epps about any of them. And Ms. Epps was not able to find out about any of them because they were not on the public website, because they were on a private website. So, you know, the long and short of it is that a jury looking at this can see that there was positions available. These administrative positions, there's a lot of them in a company like Pepco. Ms. Epps would have qualified for any of them. All they had to do was put her in a position. What's your best authority for that? It's a violation of the ADA to not inform Ms. Epps of potential positions for which she would be qualified. Well, the ADA is set up that if a person is qualified for a position, they can put her in it. Even in Pepco's policy, it says that if there's a different position than the one you were in, we can put you in that. But the reasonable accommodation is pretty meaningless if they have positions and they don't tell the employee about it. Their obligation is to engage in an interactive process and give the employee a fair chance. That's under the ADA. All right. Ask my colleagues if they have any further questions. We'll give you some time on rebuttal. Thank you. All right. We'll hear from counsel for Eppoli. Good morning. May it please the court. My name is Susan Cornell and I am here on behalf of Pepco. And this morning we are asking you to affirm the judgment entered in Pepco's favor below. Before I talk about what this case is about, I want to take a minute to talk about what it is not about and some of that you've just heard. First of all, it's not a case about the D.C. Human Rights Act anymore. The court entered judgment in our favor on the D.C. H.R.A. and Ms. Epps has not appealed that decision. So now we are purely focused on the Americans with Disabilities Act. This is not a retaliation case either. The appellant did not allege retaliation in either of her two complaints. Perhaps most importantly, and what you recently just heard about, is that it's also not a reasonable accommodation case. Ms. Epps did not allege a failure to accommodate in her complaint. It was not litigated as a failure to accommodate case. And in fact, she proceeds here under a theory that she is regarded as disabled. She has not put forth any evidence of a then existing disability in 2017 or 18. Therefore, Pepco would not have had an obligation to accommodate. But it proceeds instead under a traditional disability discrimination case. Which requires Ms. Epps to prove that she's a qualified individual with a disability, that she suffered an adverse action, and that adverse action was taken against her because of her disability. We argued below that the appellant satisfied none of these statutory requirements. The district court applied the familiar burden shifting scheme and following this court's direction, skipped directly to the third step of that scheme. Because we had asserted, as employers always will, a legitimate non-discriminatory reason for our actions. The judge below's decision on that third step was correct. There was no evidence of pretext, no evidence that the motivation for the decisions made was discriminatory animus based on Ms. Epps regarded as disability. Instead, Pepco has, as you have discussed already this morning, a legitimate non-discriminatory reason for its actions. There was simply no vacant position for which Ms. Epps or Pepco's human resources professionals believe Ms. Epps to be qualified. The record reflects that Ms. Epps and her counsel agreed in that assessment specifically. The positions that were vacant, as she found on the website, were engineering positions, technical positions, positions for which Ms. Epps claims no expertise. There was no evidence below that either Pepco's reason for not reinstating her or for terminating her was not the true reason, or that that true reason was her disability. What about the argument that's made that there were positions that Pepco did not make her aware of? There were several positions that are reflected in the record. None of those positions are positions for which we have any evidence that Ms. Epps was qualified. Mr. Swick says that these service associate positions are generic and that she would have been qualified for any of them, but there is simply no evidence in the record to support that. In fact, I would submit that there is significant evidence in the record to reject that conclusion. The service associate title is in fact generic, but the positions themselves are not generic. They are specific to the department for which they are used. It was a collective bargaining decision in 2012 to rationalize the job titles across departments. Ms. Epps was not qualified for a position in the engineering department as a service associate. They had nothing to do with the duties she did before, but perhaps more importantly, it was Ms. Epps' burden to come forward and identify which of those specific positions she believes she was entitled to and which specific positions she believes she's qualified for, and that Ms. Epps has never done. It is not Pepco's burden to identify every position that was available and say in litigation why she was not qualified for them. She had access to that material in discovery. She could have deposed anyone she wanted to. She could have put forth evidence of her qualifications for those criteria. That she has not done, and so in doing, she has failed to meet her burden. There are other statutory grounds on which this court could affirm the lower court's decision, which would remind parties that the statutory requirements continue to matter, even if an employer asserts a legitimate non-discriminatory reason. As we've just discussed, Ms. Epps was not a qualified individual with a disability. The qualification requirement under the ADA depends on an assessment of the position she either held or desired. Ms. Epps did not hold any position and had not worked in Pepco's work environment for a dozen years at the time that this decision was made. Nor, as I just said, has she identified any particular position that she desired, saying she wanted to hold the job title of service associate doesn't cut it when the service associate job title is broad and generic. But she is, as Judge Walker previously alluded to, also not qualified because of her continued receipt of Social Security Disability Income. The record will reflect that she received that beginning in or about 2009, that she continued to receive that as of February of 2020 during her deposition, and that she conceded on summary judgment in July of 2020 that she continued to receive those benefits even then. We don't know whether she continues to receive them to this day. The fact that Pepco did not have a vacancy in which to place her does not render her unable to work. You've not heard any evidence that she's actually unable to work anywhere else. And that would be the question that the SSDI would require. There is also a failure on Ms. Epps' part to satisfy her burden with respect to the second statutory requirement that she show an adverse action. Now, granted, these are unusual circumstances. And were this an ordinary situation with an individual who had been out six months or the like, we might not be making the argument that this is not an adverse action. But here, neither of the decisions that she challenges of Pepco constitutes an adverse action. She has alleged two different theories, essentially. A failure to reinstate on the one hand, and an eventual termination. The failure to reinstate was not adverse in the sense that Pepco was searching for jobs for her. The fact that they were ultimately unsuccessful does not render it adverse. And Ms. Epps, while she wants the court to allow a jury to disbelieve Pepco. Isn't that like saying that if someone applies for a job at a place where they've never worked, and they're not hired, and they believe that they weren't hired because of discrimination, the employer says, well, there's no adverse action taken against you. You just weren't hired. Oh, no, sir. No, that is certainly not what I'm arguing. I think that's distinguishable from here. A failure to hire is absolutely an adverse action. Here, though, it was not, there was no particular position for which she was failing, for which she was seeking, or that we could evaluate whether or not she could have been hired. I don't mean to suggest that had she, and in fact, I wouldn't be making that argument. Had she said there was a vacancy here, I'm qualified for it. There would have been discovery on that. I wouldn't be making the argument that it was a failure of an adverse action. But there was no particular position for which she applied or even has identified, even to this day, that she could have held. Instead, it, like the eventual termination decision that happened in 2008, was merely the continuation of a status quo brought not by PEPCO, but by Ms. Epps, her absence from the workplace for a dozen years. The only effect of that termination was to eliminate an accidental and gratuitous benefit, in that it was not until her termination that PEPCO, PEPCO's counsel, realized she had been receiving health benefits for 12 years, to which she was not entitled for at least those last eight of them. PEPCO would have been well within the law to treat Ms. Epps like an ordinary applicant. It did not need to publish to her internally posted positions. And, but it went above and beyond what it was required to do, assigning HR professionals to work with her, to speak to people in-house about positions that might have been available. And it ought not be held liable under the ADA for doing more than what was required. I want to speak for a minute about a couple of fact issues that have been raised by Mr. Swick. There was no vacancy for which she's identified a qualification. I think the record will reflect that. And there was no vacancy in her, in the position that replaced her original position. But also, all of the discussion of Marie Robertson's communication is irrelevant and untimely. Marie Robinson's determination that it couldn't accommodate her request for accommodation was essentially overruled when PEPCO continued to search for a position for her. I'd be happy to answer any questions you have. I thank you for your time. I don't want to exceed my time. We ask that you affirm the decision of the district court entering judgment in favor of PEPCO. All right. Judge Katz, Judge Walker, did you have any questions? All set. All right. Thank you, counsel. Mr. Swick, we'll give you two minutes for rebuttal. Thank you. If we look at the email where they identified the service associate positions at 623 of the appendix, it shows that there were five service associate positions. These are service associate one positions, the entry level, that were vacant. There was also a position at Forest Hill and a position with Petolia Coles that was identified. Now, it's not a mystery what these positions are. We have the position description. That's at page 611 of the record. If we compare the position description with Ms. Epps' qualifications, she meets the qualifications for her position. In any position, like an administrative position, there is a certain amount of training when you become a mentor. But all the things that are identified in the position description, she was able to do. I think, therefore, the jury can reasonably conclude it's a pretext to say they didn't have positions. Regarding whether or not she's a disabled person, she had a history of disability. She was still in treatment for her disability. And certainly, PEPCO regarded her as disabled because that's the reason they didn't bring her back. They decide first they're not going to bring her back because they're not satisfied she's not disabled. And then they pivot and say, well, we don't have positions, when the record shows that they did have positions. A reasonable jury, looking at this, can conclude that it's a pretext. And, therefore, I ask that the court reverse the decision of the district court. Thank you, counsel. We'll take the matter under advisement.
judges: Wilkins, Katsas, Walker